HIRAM POOL ET AL., INTERVENORS, v. FARMERS LOAN AND TRUST COMPANY.

No. 276.

1. **Jurisdiction—Receiver—Property in Another State.**—The court of another State being without jurisdiction to appoint a receiver for property situated entirely within the State of Texas, it can not make certificates issued by such receiver under its order a preference lien on the property. The fact that the president of the insolvent corporation for which the receiver was so appointed, in obedience to the order of the foreign court, attempted to convey the property to such receiver, can not affect the question.

2. **Parties—Trustee—Foreclosure of Mortgage.**—The trustee in a mortgage given to secure bondholders brought suit to foreclose the mortgage, and the holders of certain receiver's certificates subsequently issued on the property intervened, setting up an agreement between themselves and a part of the bondholders whereby the certificates were to have priority of lien over the mortgage. *Held,* that such bondholders were necessary parties, as the mortgage did not authorize the trustee to represent them in matters affected by such agreement.

APPEAL from Hardeman. Tried below before Hon. G. A. BROWN.

*Duncan G. Smith,* for appellants.—1. The court erred in striking out the plea of intervenors, because it shows that the receiver's certificates were authorized by a court having jurisdiction of the defendant copper company, and were issued upon proper application by the receiver of said copper company, appointed and qualified by a court of competent jurisdiction, and that said receiver's certificates were sold to intervenors to raise funds to protect the property in controversy for the benefit of creditors represented by the plaintiff trust company, and said receiver's certificates operated as a first lien upon said property. 2 Beach on Priv. Corp., sec. 747; Trust Co. v. Railway, 117 U. S., 434; Wallace v. Lomis, 97 U. S., 146; Muller v. Dow, 94 U. S.; Relfe v. Rundle, 103 U. S., 222; Parsons v. Ins. Co., 31 Fed. Rep., 305; Robinson v. Railway,

4 Am. Corp. Cases, 118; Loan and Trust Co. v. Coal Co., 50 Fed. Rep., 483; Heise v. Starr, 44 Ill., 406; Hoffensack v. Hoffensack, 61 How. Prac. Rep., 498; Beckwith v. Carroll, 56 Ala., 12; Beach on Receivers, sec. 771; High on Receivers, sec. 796; 2 Dan. Ch., 1753.

2. The bondholders were not necessary parties, because represented by the trust company as trustee for all purposes. Pollitz v. Loan and Trust Co., 53 Fed Rep., 210; Kerrison v. Stewart, 93 U. S., 155; Robertson v. Baker, 11 Fla., 192; Whitehead v. Foley, 28 Texas, 268.

*John G. Winter*, for appellee.—1. The decree alleged by appellants to have been rendered in the Supreme Court of the State of New York was inoperative to create a lien upon lands situate in the State of Texas, and receiver's certificates issued thereunder could not create or fix such lien, and without such lien the intervention can not stand. Moseley v. Burrow, 52 Texas, 403; Paschal v. Achlin, 27 Texas, 193; Booth v. Clark, 17 How., 331, 335; Railway v. Johnson, 76 Texas, 432.

2. The agreement entered into between the appellants and certain of the bondholders is of such a character that such bondholders are necessary parties to this action; they are not joined or attempted to be made parties, and the trustee is not authorized to represent them. Appeal of Harrisburg Railway, 15 Atl. Rep., 459; Railway v. Wilson, 85 Texas, 518; Hudson v. Milling Co., 79 Texas, 406; Ewing v. Wilson, 63 Texas, 90.

HEAD, ASSOCIATE JUSTICE.—This suit was instituted by appellee against the Grand Belt Copper Company to foreclose a deed in trust made by the latter to the former, as trustee upon 35,000 acres of land situated entirely within this State, to secure 400 bonds of the denomination of $1000 each, alleged to be still unpaid, and owned by different parties.

Judgment by default, with writ of inquiry, was rendered in favor of appellee against the copper company, after which, and before the execution of the writ of inquiry, appellants filed their plea of intervention, alleging, in substance, that both appellee and the said copper company were New York corporations; that appellants also were residents of the State of New York; that the holders of bonds secured by this mortgage also resided in that State; that on October 30, 1886, said copper company being insolvent, the people of said State of New York, through their Attorney-General, brought an action against it in the Supreme Court of New York County, said State, to wind up its affairs, and in said suit a receiver was appointed, and in pursuance of an order entered by said court, the land in controversy was conveyed to him by the said copper company; that on April 27, 1887, the said court directed the receiver so appointed to issue and sell receiver's certificates to the amount of $20,000, in order to obtain funds to prop-

erly care for the mortgaged property, and decreed that these certificates should have priority over the bonds secured by said mortgage; that appellants for value became the owners of a number of these receiver's certificates; that after the issuance of these certificates, the following agreement was entered into, viz:

"Memorandum of an agreement made this 21st day of May, 1888, by and between the undersigned owners and holders of first mortgage bonds issued by the Grand Belt Copper Company, in the numbers and to the amounts set opposite their names, parties of the first part, and Hiram Pool, a holder of certain certificates of indebtedness heretofore issued by William Belden, receiver of said company, under an order of the Supreme Court, a copy of which is hereto annexed, and such other persons as now own any of said certificates, and such other persons or person as may hereafter become the holders of any of said certificates which may be issued as herein provided, parties of the second part:

"1. Said parties of the first part hereby request and consent to the issuance of the remaining certificates of indebtedness, in addition to those already issued under said order, not exceeding the amount in the aggregate limited thereby, for the purpose of paying the expenses of prospective purchasers to go to and examine the property by said receiver in Texas, and of opening and exposing the same for their inspection.

"2. Said parties of the first part further agree, that they will not contest the legality, validity, or effect of such receiver's certificates, whether heretofore or hereafter issued, and expressly assent to the same and to the annexed order, and waive all objections of every kind thereto, upon the conditions hereinafter named.

"3. The parties of the second part agree that, in the event of a failure to sell the said property, or the southern portion thereof, so called, to or through said prospective purchasers now about to be sent to Texas, and for the purpose of sending whom this agreement is entered into, within a reasonable time, say four months from the date hereof, then the bondholders may institute suit in any court having jurisdiction for the foreclosure of said mortgage, and shall make the said Pool or any other holder of the receiver's certificates parties defendant, and said Pool or other holder of said certificates shall be entitled in said action to judgment in said action declaring said certificates a prior lien and incumbrance on the mortgaged premises to that of said mortgage, and to a decree providing that on the sale of said mortgaged premises under said judgment the amount due, and interest, on said certificates, shall first be paid out of the proceeds arising on such sale, in priority to said mortgage.

"4. It is further agreed, that in case the holders of said bonds do not institute proceedings to foreclose said mortgage within said date,

that then the said Pool and other holders of said certificates may proceed to foreclose the lien of said certificates, without let or hindrance of or from the holders of said bonds or their assigns.

"5. In case the bondholders shall buy in said property upon a sale under such decree, then the holders of said certificates agree not to enforce said judgment for the collection thereof until the ultimate disposition of said property by or for the bondholders, provided such disposition be made on or before the 1st day of January, 1890, it being understood and agreed that, in the event of such purchase and disposition of said property by the bondholders, the amount due upon said certificates, with interest, shall be first paid from the proceeds of such ultimate sale, and shall have preference over the debts secured by said mortgage, and in case the said bondholders shall not have paid the amount of said certificates prior to January 1, 1890, that then the holders of said certificates may then proceed to enforce their said judgment.

[Signed]

"EDWARD A. FARRINGTON,    [$24,000]
        "By HENRY W. JOHNSON, His Attorney.
"JOHN M. FORBES,    [$22,000]
"H. H. WILBERT,    [$1,000]
"C. R. BISSELL,    [$17,000]
"WILLIS A. BARNES,    [$2,000]
"CHARLES ECKHARD,    [$2,000]
"N. H. DAVIS,    [$5,000]
"C. C. ABEL,    [$2,000]
"JOHN H. HINTON,    [$10,000]
"ESTATE OF FERGUSON,    [$35,000]
        "By JOHN P. ADAMS, Attorney.
"JOHN P. ADAMS,    [$1,000]
"JOSHUA WILBOUR,    [$1,000]
"W. M. WALTON,    [$20,000]
"M. W. TABOR,    [$23,000]
"CHARLES HEMER,    [$5,000]
"JOHN HALSTED,    [$5,000]
"ALL STUDSON'S ESTATE,    [$5,000]
        "By C. S. SUTTON, Trustee."

That the signers of this agreement were still the owners of said bonds, and resided in said State of New York; that by reason of the foregoing facts, appellants were entitled to priority in this suit over the debt represented by appellee, and they asked that this priority be recognized in the final decree rendered herein.

The court below sustained exceptions interposed by appellee to this plea of intervention, and rendered judgment foreclosing the mortgage declared on in the original petition; and the correctness of this action

of the court is the only question presented for our decision upon this appeal.

In a recent case decided by our Supreme Court (Texas & Pacific Railway Company v. Nancy J. Gay, 86 Texas, 571), the most important question presented by this appeal has been adjudicated adversely to appellants herein. In that case, in a lengthy opinion, it is held that a court of another State is without jurisdiction to appoint a receiver to take possession of, operate, and control property situated entirely within this State.

It therefore follows that appellants' plea of intervention shows no cause of action, in so far as their right to priority is dependent upon the decree entered by the Supreme Court of the State of New York. If that court was without jurisdiction to appoint a receiver, it of course had no power to authorize the issuance of certificates of indebtedness by him and give them priority over the mortgage debt.

The fact that the president of the copper company, in obedience to the order of the New York court, attempted to convey this land to the receiver appointed by it, can not affect this question. Moseby v. Burrow, 52 Texas, 396.

The court below properly held, that it could not adjudicate appellants' rights under the agreement with certain of the bondholders copied above, without having the makers of this agreement before it as parties to the suit.

It is unquestionably true that, in a number of cases, the trustee appointed by the instrument creating the trust will be held authorized to represent the beneficiaries therein in suits involving the title to the trust property, as well as in the execution of the powers expressly conferred upon him. This is especially true where the parties are numerous, as in mortgages given to secure railroad bonds, and would include the mortgage given to appellee by the copper company in this case. It has also been held applicable to assignments made by insolvent debtors for the benefit of their creditors. Ebell v. Bursinger, 70 Texas, 120; Preston v. Carter, 80 Texas, 388, and cases there cited.

It will be observed, however, that the instrument relied upon in this case is not signed by the owner of the property, and no power is attempted to be conferred upon appellee as trustee in the original mortgage to represent them in reference to this contract, even by the bondholders who did sign it. It seems to be an agreement between appellant and the signing bondholders, pure and simple.

We think it clear that this agreement conferred no power upon appellee to represent the signing bondholders in reference to any of the matters embraced therein, for the simple reason that it attempted to give no such authority. We are therefore of opinion that these bondholders were necessary parties to a decree giving appellants priority

over them by reason of the stipulations contained in that instrument. Hudson v. Milling Co., 79 Texas, 401.

As the proceeds of the sale under the judgment rendered by the court below will be paid to appellee as trustee in the original mortgage, we see no reason why appellants can not, in a proper proceeding in the New York courts, in which State all of the parties are domiciled, have that part of such proceeds which would be due the bondholders who signed the instrument above set forth, first applied to the discharge of these receiver's certificates, in compliance with its terms.

The judgment of the court below will be affirmed.

*Affirmed.*

Delivered May 23, 1894.