## Lockport Felt Company

### *v.*

## United Box Board and Paper Company.

[Decided October 16th, 1908.]

1. There is a general appearance by a mortgagee of insolvent, giving the court jurisdiction of it, at least for the purpose of an application by the receiver for leave to borrow money and issue receivers' certificates of indebtedness, to be a lien prior to the mortgage, the mortgagee having, for purposes unconnected with such application, filed its petition in the

suit in which the receiver was appointed, and having in open court consented to a portion of the prayer of the receiver's petition on such application.

2. Unlike the case of a public service corporation, the receiver of a strictly private corporation may be authorized to borrow money on receivers' certificates, which shall be a lien prior to that of a subsisting encumbrance only for one purpose—the preservation of the property and the expenses of realizing on it by a sale, except, possibly, the continuance of insolvent's business, as an absolute essential to such preservation.

3. To provide a fund for paying insurance on the property of insolvent, and interest and an installment of $13,000 on a mortgage of $188,000 on a piece of property valued at $500,000, such mortgage being subject to foreclosure in default of the payment, the receiver will be authorized to borrow money on receivers' certificates, to be a lien prior to that of a second mortgage on that and all other property of insolvent; it being shown that no other course can be successfully adopted to preserve the property.

4. Part of the property of insolvent being lands out of the state, the court has no jurisdiction to authorize the issue of receivers' certificates which shall be liens thereon, but application therefor must be made in each of the jurisdictions in which the property lies.

5. The powers of a receiver are limited by the terms of the order of his appointment and the statute authorizing it; so that, in the absence of authority therein for his borrowing money on receivers' certificates, which shall create a specific lien on the property in his custody, he must be specially authorized by the court having jurisdiction over him and the property.

6. The hearing of an application by a receiver to borrow money on receivers' certificates, the lien of which shall be superior to existing liens on insolvent's property, must be on notice to the security holders whose rights are sought to be affected.

On receivers' petition for leave to borrow money.

*Mr. Sherrerd Depue,* for the receivers.

*Mr. William H. Carey* and *Mr. Boston* (of the New York bar), for the Trust Company of America.

HOWELL, V. C.

In July, 1908, this court appointed receivers of the property and assets of the United Box Board and Paper Company, a New Jersey corporation, which is now in process of being wound up under the statute. The company was engaged in the

business of manufacturing box board at eighteen mills scattered about the United States and situated within several jurisdictions. Among the others it owned a mill in Indiana called the Wabash mill, which was valued in a recent report made to the court at $500,000, but which has been spoken of in other proceedings before the court as having a value much larger. At the time it was conveyed to the box board company it was subject to a mortgage made to a trustee to secure an issue of bonds aggregating $200,000. There is an agreement in the mortgage that beginning with the present year the company would redeem a certain number of the bonds secured by this mortgage at stated periods. On September 1st, 1908, the company was under obligation by the terms of the mortgage to purchase and retire $13,000 of these bonds, it having previously and before the receivership redeemed twelve of the bonds aggregating $12,000, so that now the mortgage stands as security for $188,000. The interest on these bonds matured also on the first day of September. The company is given three months after the first of September in which to pay this interest and redeem the thirteen bonds. If a default occurs at the expiration of the three months the whole mortgage money becomes at once due and payable. The insurance policies on all the company's property have recently expired and there is required upwards of $24,000 to pay the premiums in order to effect a renewal of the policies for another term. The receivers are without funds for these purposes, and they now apply to the court for leave to borrow a sum aggregating upwards of $42,000 for the purpose—first, of paying the overdue insurance premiums on the policies of insurance; second, of paying the arrears of interest on the underlying mortgage on the Wabash mill; third, of raising the sum of $13,000 to redeem bonds of the Wabash company, as is required by the terms of the mortgage. The whole property of the company is covered by a mortgage to the Trust Company of America, a New York corporation, to secure an issue of bonds made by the company, aggregating about a million and a quarter dollars. This is a second mortgage on the Wabash mill. The application includes a prayer for leave to issue receivers' certificates of indebtedness to the amount necessary to be raised, and

the making of such certificates representing such indebtedness a lien on the property of the company prior to the mortgage held by the Trust Company of America, but so far as the Wabash property is concerned subsequent to the underlying mortgage thereon. The Trust Company of America appeared by counsel and in open court assented to the prayer of the petition to raise money with which to pay the insurance premiums, and to that extent to displace the trust company's mortgage, but as to the interest on the Wabash mortgage and the redemption of the thirteen bonds required by the mortgage, counsel for the Trust Company of America deny the jurisdiction of this court over the trust company, and as to these two sums deny the right of the court to displace the mortgage held by it thereby. The question, therefore, is whether this court may authorize the borrowing of money on receivers' certificates of indebtedness to meet the interest and the sinking fund appertaining to the Wabash mortgage and in so doing displace the mortgage of the Trust Company of America, not only without its consent, but against its protest. The objection made by the Trust Company of America that this court has no jurisdiction over it, and therefore cannot make the order prayed for, must fail for two reasons—*first,* because the same company appears by the records of the court to have filed its petition in this suit for purposes unconnected with the present application, seeking affirmative relief and without any permission to appear specially for the purpose, and *second,* because the appearance on this application is general inasmuch as it consents in open court to a portion of the prayer of the petition. These steps in the cause must be held to be a general appearance, at least for the purposes of the pending motion.

If there were no specific and fixed liens and encumbrances upon the property of the company there could be no question but that the court could authorize the receivers to borrow moneys for proper purposes and make the securities therefor first liens upon the property in the receivers' custody. The difficulty arises in this class of cases in the desire or attempt to make this sort of securities a lien prior to existing encumbrances on the specific property.

With regard to corporations of a *quasi*-public nature, such as railway and telegraph companies and other corporations which belong to the public service class, there appears to be little difficulty either on authority or in reason as to the right to displace prior liens by receivers' certificates. These corporations, their stockholders and bondholders, hold subject to the public right, and if corporations of this class become insolvent and thereby fail in the performance of their duty to the public, the court has the right to pledge the property and all the interests of the owners and lienors to raise money with which to enable the receivers to carry out the public duties and obligations of the corporation. It will be sufficient to cite on this point the opinion of Mr. Justice Bradley in the supreme court of the United States, in the case of *Wallace* v. *Loomis, 97 U. S. 146.* See, also, *Fosdick* v. *Schall, 99 U. S. 235.* The cases as to this class of corporations are numerous and will be found collected in *3 Cook Corp.* §§ *876, 877.* The same rule prevails in the English courts. *Greenwood* v. *Algesiras Railway, 2 Ch. 205; 63 L. J. Ch. 670 (1894).*

There is, however, in principle and on authority, a wide distinction between the power of the court to authorize the displacement of subsisting mortgages and liens in the case of public corporations and its power in the case of mere private enterprises which have taken the corporate form. The general power to authorize the issue of receivers' certificates of indebtedness for the purpose of continuing a business which exists in the case of a public corporation does not exist in the case of a private corporation. When a receiver is appointed of a private corporation under our statute the court may authorize him to continue the business temporarily, but with the purpose of winding up, provided the receiver has in his possession sufficient assets to enable him to go on; but if he should find it necessary to borrow money with which to continue the business, the rule undoubtedly is that he shall not be authorized to issue receivers' certificates to raise money therefor which shall displace the lien of a subsisting encumbrance. The reason for this is very obvious. It would be a gross violation of that clause of the federal constitution which prohibits the states from passing laws violative of the obligations

of contracts.   There is, however, one circumstance which will justify the court in issuing these certificates and displacing prior liens thereby.   That occurs in a case in which the money is required not for the purpose of operating the business but for the purpose of saving the property from destruction.   A brief examination of the cases will demonstrate the validity of this position.   In *Porch* v. *Agnew, 70 N. J. Eq. (4 Robb.) 328,* the question came under the consideration of Vice-Chancellor Grey; the suit related to the receivership of a large and valuable frame hotel property at Atlantic City.   The principal value of the property was in the building, and there was no income from it with which the receiver could pay insurance premiums and the services of a watchman, which were indispensable under the terms of the insurance policies.   The bondholders opposed the receiver's application, but the vice-chancellor granted it upon the principle that it was necessary for the preservation of the property.   A similar application was dealt with by the court of appeals of New York in the case of *Raht* v. *Attrill, 106 N. Y. 423.*   There a receiver had been appointed for the purpose of winding up an insolvent corporation whose property consisted largely of an unfinished hotel building at Rockaway Beach.   The receiver sought authority to borrow money for the purpose, among other things, of paying off workmen who in default thereof had threatened to burn the building.   The court of appeals denied the power of the court of first instance to supersede the lien of the first mortgage to raise money to pay the laborers, and said, "the act of the court in taking charge of property through a receiver is attended with certain necessary expenses of its care and custody, and it has become the settled rule that expenses of realization, and also certain expenses which are called *expenses of preservation,* may be incurred under the order of the court on the credit of the property, and it follows from necessity in order to the effectual administration of the trust assumed by the court that these expenses should be paid out of the income, or when necessary out of the *corpus* of the property before distribution or before the court passes over the property to those adjudged to be entitled."   The court held further that there was no paramount necessity arising out of the fact that the workmen had threatened to burn the

building, but that this situation must be dealt with by the ordinary legal methods. In *Karn* v. *Rorer Iron Co., 86 Va. 754; 11 S. E. Rep. 431,* the property in question consisted of a mine which had no marketable value independent of a railroad constructed and used by its owner for the transportation of ore. The court authorized its receiver to protect the title to the railroad and to repair it, and to borrow money on certificates which should be a first lien on all the company's property. The court of appeals gave this reason for holding the action valid: "It was necessary to raise money in some way to preserve the property from destruction or serious injury, and to put it in salable condition, and the only practical mode of accomplishing that fact was by issuing receivers' certificates." In *Dalliba* v. *Winschell, 11 Idaho 364; 82 Pac. 107,* it was said that courts of equity have power to direct their receivers to care for, protect and preserve the property and to decree that the charges and expenses thereof be prior and preferred liens over other subsisting liens, mortgages or encumbrances, but to go beyond the preservation of the property and issue certificates for money to be used in paying running expenses is beyond the power of the court. The supreme court of Maryland, in an opinion by Mr. Justice McSherry, in *Hooper* v. *Central Trust Co., 81 Md. 559,* goes further. He says: "When the property of private corporations or of individuals has been placed in the hands of a receiver, all expenses for safekeeping and preservation are properly payable out of the income, if there be any, or, if there be none, then out of the proceeds of the *corpus* of the estate when sold; but this necessary power by no means includes authority in such instances to allow the creation of liens through the medium of receivers' certificates which will take priority over existing antecedent liens. Extensive as are the powers of the courts of equity, they do not authorize the chancellor to thus impair the force of solemn obligations and destroy vested rights."

Other cases in the state courts are: *Osborne* v. *Bigstone Company, 96 Va. 58; 30 S. E. Rep. 446; International Trust Co.* v. *United Coal Co.* (Colo.), *60 Pac. 621; Merriam* v. *Victory Mining Co., 37 Oreg. 321; 60 Pac. 997.*

The point has received the largest illustration in the federal jurisdiction, and there are·many cases in the circuit court of the United States in the several circuits in which the doctrine above stated has been adhered to. In *Farmers' Loan and Trust Co. v. Grape Creek Coal Co., 50 Fed. Rep. 481,* the subject-matter of the suit was the foreclosure of a mortgage on the property of a coal mining company. The receiver sought an order authorizing him to issue receivers' certificates which should be a first lien on the trust property to enable him to pay taxes then due, to take up certain outstanding certificates, and to continue the operation of the mine. Gresham, circuit judge, quotes the words used by Judge McSherry in the *Maryland Case,* and after discussing the right of the court to deal with public corporations he proceeds: "Private corporations owe no duty to the public, and their continued operation is not a matter of public concern. It is only against railroad mortgages that the supreme court of the United States has sustained orders giving priority to receivers' certificates representing particular indebtedness, and, as already stated, then only on principles having no application to a mortgage executed by a private corporation owing no duty to the public."

In the case of *Fidelity Insurance Trust and Safe Deposit Co. v. Roanoke Iron Co., 68 Fed. Rep. 623,* the complainant was foreclosing a mortgage on the property of the defendant, a private corporation engaged in the production of iron, a receiver was appointed who petitioned for leave to issue receivers' certificates and to borrow money thereon for the purpose of carrying on the business of the company. The prayer of the petition was denied upon the principle that it was beyond the authority of the court to authorize the receiver of a private corporation to issue certificates which should displace the lien of a subsisting mortgage for any such purpose. In the case of *Hanna* v. *State Trust Co., 70 Fed. Rep. 2,* the court appointed a receiver for a private corporation engaged in business of irrigation and colonizing arid lands. In a suit brought to foreclose a second mortgage, it was held that the court appointing the receiver had no authority to authorize its receiver to issue certificates to raise money to carry on the business of the insolvent corporation and

improve its lands already covered by a mortgage. In *Doe* v. *Northwestern Coal Co., 78 Fed. Rep. 62,* it was held that receivers' certificates issued by the receiver of a private corporation cannot be made a charge upon the assets of the corporation in preference to existing liens and as against lienors who have not given their consent thereto.

In *International Trust Co.* v. *Decker, 152 Fed. Rep. 78,* the insolvent company, a Maine corporation owning property in Alaska, mortgaged the same to the complainant, a Massachusetts corporation. Proceedings were taken to foreclose the mortgage, in which proceedings the receiver was authorized to issue certificates on which to borrow money with which to carry on the company's business, and they were by their terms made a first lien upon the property of the corporation. It was held by the circuit court of appeals that the mortgage could not be displaced, following *Baltimore Building and Loan Association* v. *Alderson, 90 Fed. Rep. 142,* in which the circuit court of appeals said : "In case of private corporations the court cannot authorize the issue of receivers' certificates for the purpose of improving, adding to or carrying on the business of the company without first having the consent of the creditors whose liens would be affected thereby."

The English rule will be found in the judgment of Mr. Justice Kekewich in *Securities and Properties Corporation* v. *The Brighton Alhambra, 62 L. J. Ch. 566; Kerr Rec. 195.*

From the cases above cited and from the constant course of practice in this state the rule may be deduced that in case of private corporations the court may authorize its receiver to borrow money upon the faith and credit of all the property of the corporation and authorize the issuing of securities which shall displace all prior liens and encumbrances, but only for one purpose, viz., the preservation of the property and the expenses of realizing upon it by a sale. This necessity should be imperative and paramount and under no other circumstances can a court justify itself in attempting to undermine prior liens.

The rule which forbids the displacement of prior liens by receivers' certificates, at all events, in the case of private corporations, is not the reasonable rule. It goes too far. It may well be

that one of the chief reasons for appealing to the court to appoint a receiver is that the property may be preserved from spoliation or destruction, and if, after the court shall have assumed to care for the property, it finds that there is no income to support it, and that the court has no power to pledge the property for its own preservation or realization, the original action in appointing the receiver would be futile.

Under no circumstances would the court be justified in authorizing its receiver to borrow money and make the obligation thereof a first lien on the property of a private corporation by the displacement of existing liens for the mere purpose of continuing the business in which the company was engaged, unless possibly in a case in which it satisfactorily appeared that the continuation of the business was absolutely essential to the preservation of the property in the receiver's custody. In the case of a private corporation this necessity is made the criterion.

In addition to the limitations thus set to the power of the court it may be well to add that in every case the power now appealed to is an extraordinary one and is liable to abuse unless exercised with the utmost caution. The court should be satisfied by a preponderance of circumstances that no other course could be successfully adopted, and that practical ruin would ensue if the authority were withheld. All the facts should be exhibited which make the necessity apparent; all the parties affected should be notified and a full hearing accorded to all objectors.

I think that the required necessity exists in this case. As to the payment of the insurance premiums, that may be dismissed with a word. It is only common prudence to provide a fund for that purpose. *Porch* v. *Agnew, supra.*

As to the Wabash mill, it appears that, unless the interest on the bonds and the sinking fund so-called shall be met within three months from September 1st, the holders of the underlying bonds may foreclose their lien. In the latest report of the condition of the company this mill is valued at $500,000; it has been carried on the books of the company at a very much higher valuation. It is subject to a mortgage of $188,000, leaving a substantial equity, which ought to be protected for the benefit

of the bondholders under the second mortgage who are represented by the Trust Company of America. In case a default should happen the underlying mortgage would be foreclosed, and in the present condition of the trust the receivers would have no money with which to protect the equity at the sale, and thus the stockholders and bondholders of the box board company would lose the entire property.

I therefore think that the prayer of the petition should be granted and that the receivers should be permitted to issue certificates to the amount required for the purposes above mentioned, which shall bear interest at a rate not greater than six per cent. per annum, and be disposed of at not less than their par value and be made a lien on all the property of the company in the possession or under the control of the receivers prior to the mortgage held by the Trust Company of America and prior to the claims of the bondholders secured thereby, but subject and subsequent to the underlying mortgage of $188,000 now on the Wabash mill. Inasmuch, however, as this court has no jurisdiction to authorize the issue of receivers' certificates which shall be a lien on the lands in another state (*Poole* v. *Farmers' Loan and Trust Co., 7 Tex. Civ. App. 334*), it will be necessary to apply for and obtain a similar order in each of the jurisdictions in which property of the company lies.

There are some questions of practice which may well be referred to here. Counsel will find in many of the cases that receivers have undertaken to borrow money on receivers' certificates without the authority of the court. It is, perhaps, unnecessary to say that in this jurisdiction a receiver has no such power by virtue of his office, nor has he any power to issue any form of evidence of indebtedness which shall create a specific lien on the property in his custody as an officer of the court. He may only do so by the formal enabling decree of the court which has jurisdiction over the receiver and over the property. It may be stated as a general rule that a receiver's powers are limited by the terms of the order of his appointment or by the statute which authorized it. *Runyan* v. *Farmers', &c., Bank, 4 N. J. Eq. (3 Gr. Ch.) 480; Verplanck* v. *Mercantile Insurance Co., 2 Paige 438; Quincy, &c., Railroad* v. *Humphreys, 145 U. S. 82; Sm*

*Rec.* § *25.* No receiver, therefore, would be justified in incurring any indebtedness on the faith of the property and in issuing obligations therefor unless the act were sanctioned by the order of the proper court. *Vilas* v. *Page, 106 N. Y. 439.* It must likewise be remembered that the court has no authority to hear an application of this nature unless notice thereof shall have been given to all the security holders whose rights are sought to be affected. As has already been noted, such notice was given in this case. *Laughlin* v. *United States Rolling Stock Co., 64 Fed. Rep. 25; Third Street Railway* v. *Lewis, 79 Fed. Rep. 196.*